CASE 82—PETITION EQUITY—December 16.

## Clemmons v. Grow.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. PARTITION FENCES—RIGHTS OF REMOVAL—STATUTORY CONSTRUCTION.—The provisions of Sections 1786 and 1787 of the Kentucky Statutes authorizing a land owner to remove his part of a partition fence between certain dates, on notice, refer to any one of the partition fences named in the various sections of the statute, and not merely to the partition fence for which in part the owner of unenclosed lands is required to pay when he desires to enclose them by uniting his outside boundary fence to the fence of another.

2. REMOVAL OF PARTITION FENCE.—When a land owner removes a panel of his part of the partition fence erected by him on his own land, and detaches it from that part of the fence erected by

the adjoining land owner, there is a removal of the fence in the meaning of the statute, and it can no longer be treated as a partition fence so as to deprive the owner on whose land it was erected from using it as part of a barbed wire fence, the statute only forbidding the use of barbed wire in the construction of division fences.

3. STATUTORY CONSTRUCTION.—Under the provisions of Section 1786 the removal of a partition fence must be between the first of December and the first of March following; and a removal on the first day of December not being authorized, the adjoining land owner may recover nominal damages, or such actual damages as he may have sustained by reason of such removal.

J. M. TANNER, FOR APPELLANT.

1. The provision of Section 1784 of the Kentucky Statutes that "in certain cases an adjoining land owner may after he has built a lawful fence on his portion of the line, require the other to erect a lawful fence on his part of the line on which no barbed wire shall be used except by consent," does not apply to this case because the plaintiff does not claim to have erected a lawful fence on his part of the line, and because the fence in question had not been erected at the instance of the other party.

2. But if it should be said that that section forbids the use of barbed wire in the construction of division fences generally, it does not apply where a fence is not being constructed but only repaired or strengthened.

3. But the fence built by appellant was in no sense a division fence; the old worm fence constituted appellant's part of the division fence up to the time he gave notice, and the giving of that notice was a formal declaration in the manner prescribed by law of his intention to do away with the division fence and to no longer join fences with appellee. Gwinn v. Ditto, 3 Bush, 547.

SAMUEL M. WILSON, FOR APPELLEE.

1. Sec. 1784 of the Kentucky Statutes prohibiting the use of barbed wire in the construction of division fences is valid and enforcible.

2. The fence in dispute did not cease to be a partition fence simply by the removal of one panel thereof by appellant.

3. The barbed wire stretched along the old rail fence was used within the meaning of the statute in the construction of a division fence; and while we speak of the "wire fence" and the "worm fence" as two separate and distinct fences, they constitute together practically but one fence, and that a division fence.

4. Appellant has been guilty of a violation of the statute forbidding

Clemmons v. Grow.

the use of barbed wire in the construction of division fences and was properly enjoined from continuing the use of the same.

J. R. MORTON, OF COUNSEL ON THE SAME SIDE.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The parties to this action own adjoining and enclosed lands. By a verbal agreement a partition fence was built by them. Grow constructed his part of pickets and Clemmons constructed his part of rails, what is commonly called a worm fence. Clemmons' fence appears to have been built upon his own land. On August 31, 1894, he gave Grow a notice in writing that he would proceed, after the 1st of the following December, to remove his part of the partition fence. On December 1st Clemmons removed the panel of his fence which united it to the part of the partition fence which Grow had built. On the same day he erected fence posts on his own land the entire distance of the partition fence. In doing so he put the posts in the corners of the worm fence so far as it extended, and from that point he planted posts on his own land, but near the picket fence. Part of the distance he placed three strands of wire and the balance only two. The kind of partition fence which existed between the lands of the parties is described in section 1783, Kentucky Statutes (section 4, act approved April 20, 1893). That section relates to partition fences which exist by agreement or acquiescence. Section 1784, Kentucky Statutes, provides for the erection of partition fences under certain conditions. Section 1785, Kentucky Statutes, provides the method of repairing partition fences. The first clause in section 1786, Kentucky Statutes, provides the conditions under which one can not be compelled to contribute to the

erection of a partition fence. This is followed by a pro-
vision which seeks to regulate the conditions upon which the
owner of unenclosed lands desires to enclose them by uniting
his outside boundary fence to the fence of another.

The first clause of section 1786 would more appropriately
appear in section 1784. The last clause in section 1786 is as
follows: "Neither party shall remove same without the con-
sent of the other, except between the 1st of December and
the 1st of March of the ensuing year."

Section 1787 is as follows: "No such change as named
in the last section shall be made unless three months' pre-
vious notice in writing shall be given to the opposite party
by the person desiring to make the same."

While the court does not quite understand why the legis-
lature would attempt to make one, under certain conditions,
contribute to the erection of a partition fence, but, at the
same time, allow him to immediately give notice and remove
it. But it can not be said that that clause of section 1786
which authorizes a party to remove his part of the parti-
tion fence between certain dates upon notice relates par-
ticularly to any one of the partition fences referred to or
described in the various sections of the statute. While this
clause might more appropriately have been part of section
1787, still the language is comprehensive enough to embrace
any one of the partition fences to which we have referred.
It can not be said that it refers alone to the partition fence,
for which in part the owner of unenclosed lands is re-
quired to pay when he desires to enclose them by uniting
his outside boundary fence to the fence of another, by the
doing of which his unenclosed lands will thereby become

Clemmons v. Grow.

enclosed. If the section which provides for the removal of partition fences does not relate to the class last described, then it relates to all those which we have enumerated.

We, therefore, conclude that Clemmons had the right to remove his fence between the 1st of December and the 1st of March following the service of the notice. The manifest purpose of the statute was to prevent one who had built part of a partition fence, or who had an interest otherwise in a partition fence, from removing it without notice, and thus expose the crops of his neighbor, or to expose the premises of his neighbor to the ravages of stock or deprive him of the use of it for a time. The time which was prescribed for the removal is such when it is supposed that the farmer will not have growing crops, and at the same time allow him to erect a fence upon his own lands for the purpose of enclosing his premises. Therefore, the legislature has wisely selected the season during which the removal must take place.

It is insisted by counsel for appellee that the removal of the panel of the fence, as we have described, did not constitute a removal in contemplation of the statute. The worm fence was entirely on the land of Clemmons. Grow had notice that he could no longer enjoy the use of that fence as a partition fence; that if he desired to continue to have his lands enclosed he could not look to Clemmons to aid him, and share the burden and expense of the partition fence, but that he would be required to build one himself along the line where Grow's part of the fence had existed. As the rails were upon Clemmon's land, he had the right to permit them to remain at that place or to take them else-

where, as he chose. When the fence was detached from that of Grow it could no longer in fact or in law be regarded as a partition fence. If Clemmons had the right to remove it, he certainly had the right, if he chose to do it, to build another in close proximity to the line between his own and the lands of Grow. In doing so he could utilize the fence which was on his own land, and he did so.

It seems to us that that did not re-invest it with the character of a partition fence. We think there was a removal or a change so that it could not longer be treated or regarded as a partition fence. While it remained a partition fence Clemmons had no right to use barbed-wire in repairing it, neither could he use it in the construction of a new one without the consent of Grow.

The legislature has not attempted to prevent the owner of land from erecting fences of barbed-wire except partition fences. If Clemmons had the right to build a fence along his line, then he had the right to build it of rails and barbed-wire, or either. If Grow desired to continue to have his land enclosed, he had the right to build whatever kind of fence he desired. If he did not desire to do this, but wanted to allow his land to be enclosed in part by a fence which Clemmons had erected, it did not give him the right to dictate to Clemmons what character of fence he should build. It is true that Clemmons removed the fence one day earlier than he was authorized under the law. He did it on the 1st day of December; the law did not require him on the day following to do an idle thing to put up the panel of fence which he had removed and immediately tear it down in order to say there had been a removal of the fence. The

right to remove on that day existed, and Grow was aware of his continued purpose to no longer maintain a partition fence. Had Grow sought to do so he might have maintained an action against Clemmons and recover nominal damages because of the removal on the 1st day of December, or had he sustained actual damages in consequence of the removal a day before Clemmons was authorized to make it, a recovery could have been had on that account.

The judgment is reversed for proceedings consistent with this opinion